## Poston v. Commonwealth.

Jan. 26, 1940.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant was convicted in the Rowan circuit court of the offense denounced in Section 1158 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, which consists in detaining a woman with the intent therein specified. His punishment was fixed by the jury at two years confinement in the penitentiary and the court having overruled his motion for a new trial he prosecutes this appeal.

The motion for a new trial contains six alleged grounds as fatal and reversible errors, only two of which, even if true, could be made available for the purpose, and they are (1) that the court erred in overruling defendant's motion for an acquittal, and (2) if mistaken therein (1) then the verdict is flagrantly against the evidence. The other four grounds are so devoid of merit, and so unavailable for reversal purposes, that counsel did not dignify any of them by any mention of them whatever in his brief, and which under numerous opinions of this court constituted an abandonment of them, even if any of them possessed merit, but which is wholly untrue. However, counsel with apparent conviction and sincerity vigorously argues that the court erred in the particulars mentioned in grounds (1) and (2) each of which involves the testimony heard at the trial given by the witnesses for both the Commonwealth and defendant, to which but a brief reference is required to demonstrate the fallacy of counsel's contention.

The victim was Mrs. Rebecca Vestaugh who was at the time 76 years old. She lived in the suburbs of the town of Farmers in Rowan county and her family consisted of a widowed niece, Sarah Gibson, and a thirteen year old daughter of the latter. Mrs. Gibson was a practical nurse in the vicinity where she resided and at the time of the commission of the offense in June, 1939, she was engaged in waiting on two sick women who were members of the family of a Mr. Fraser, living in the same neighborhood and was, consequently, away from home on the particular occasion, leaving only the victim and her grandniece as the only occupants of the household. Defendant and one Conn appeared at Mrs. Vestaugh's residence at about three o'clock in the night and

obtained entrance into the house which they claimed was for the purpose of getting out of the rain, which was but a slight drizzle. They had been wandering around in the neighborhood throughout the night, occasionally quenching their thirst at several roadhouses that they visited.

Mrs. Vestaugh was, and had been for many years prior thereto, a midwife, she claiming to have attended upon the births of many children in that community. She testified that defendant stated to her that he needed her services as such at his home where his wife was about to be confined and asked if she could render the services requested. She informed him that she would, but she would be compelled to go by the Fraser home and have her niece to return to their joint home to take care of the latter's thirteen year old daughter while the victim was away on her requested errand. She and the defendant then started walking to a place where he had informed her they could take an automobile and make the remaining journey to his home some miles away in it, but they would first walk by the Fraser home and have Mrs. Gibson return home to be with her young daughter during the victim's absence. She stated that after she and defendant had gotten some hundred or hundred and fifty yards from her residence he made improper proposals to her, which she resented but he forced her upon the muddy ground and attempted to carry out his purpose, but failed, leaving, however, evidence of his effort on her underclothing. She gave the alarm by crying out and which was heard by her niece from the Fraser home—only some hundred yards from the spot—and she and others went immediately to the scene where they found the victim on the ground in the muddy road or by its side with defendant absent. She was picked up and assisted to her residence which she reached about three-thirty or four o'clock of the same night and was accompanied by her niece Mrs. Gibson. Other women in the neighborhood who had heard of the incident some short time thereafter called at her home and each of them testified to the condition of her clothing as above stated.

Defendant denied the detention as related by the prosecutrix and said that she fell in or by the side of the road where she was found, and that she immediately cried out in such a manner that he concluded she was crazy, and which frightened him and he ran away and went to his home where he was later arrested. However,

both he and Conn had previously testified that it was the intention for both of them to go to the latter's home and spend the rest of the rest of the night, but all of that arrangement was forgotten and abandoned when defendant became frightened and sought the shelter of his own home. Mrs. Vestaugh was proven to be a woman of good moral and upright character, none of which testimony was attempted to be refuted.

Defendant and his companion Conn testified that after gaining entrance into the victim's home, at the past midnight hour indicated, one or the other of them made inquiry as to the whereabouts of Mrs. Gibson and that the victim answered that she was waiting upon patients in the home of Mr. Fraser; and that she then proposed to go after her if they would pay her $2. However, neither of them claimed that her proposal was accepted, although they insisted that the trip which defendant and the victim embarked upon was for the purpose of going after Mrs. Gibson and returning her to the Vestaugh home, presumably for immoral purposes, but no direct testimony is advanced to establish such purpose. There are many circumstances appearing in the testimony pointing unerringly to the guilt of appellant as testified to by his victim, some of which are so shocking that we will not incorporate them in this opinion. On the other hand, the story told by defendant—a part of which was corroborated by his companion, Conn—is so utterly incredible, and such a wide departure from innocent action and conduct, as to inevitably lead to the conclusion that their testimony was a fabrication from beginning to end.

Notwithstanding the testimony is in substance that which we have related, counsel in an effort to substantiate his contention—of the insufficiency of the evidence to prove guilt or to permit the submission of the case to the jury—emphasizes the fact that on account of some early female ailment Mrs. Vestaugh was incapable of engaging in the act contemplated by the statute, and for which reason a peremptory instruction of acquittal should have been given to the jury. Counsel fails to impress us of the logic of that argument, in view of the fact that the offense of which appellant stands convicted does not require intercourse as one of its elements, but which is otherwise in the crime of rape. The instant offense is complete when there is the requisite detention of the female with the intention on the part of the detainer to

so engage. The condition of the underclothing of Mrs. Vestaugh immediately afterwards, and her being found upon the ground at the point indicated, are mute facts of sufficient weight to convince any reasonable and impartial mind of appellant's guilt beyond a reasonable doubt when augmented by her testimony as above related.

We, therefore, conclude that the jury dealt leniently with the appellant, and also that he received a fair and impartial trial without any error—technical or otherwise—having been committed during its progress.

Wherefore the judgment is affirmed.